# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KALYN FREE, )<br>)<br>          **Plaintiff,** )<br>)<br>v. )<br>)<br>KEVIN W. DELLINGER, Attorney General )<br>of the Muscogee Creek Nation, in his official )<br>capacity, and GREGORY H. BIGLER, Judge, )<br>in his official capacity, )<br>)<br>          **Defendants.** ) | Case No. 18-CV-181-CVE-JFJ |

## OPINION AND ORDER

Now before the Court are the following motions: Plaintiff's Motion for Preliminary Injunction and Brief in Support (Dkt. # 3); Defendant Dellinger's Motion to Dismiss Plaintiff's Complaint for Failure to Exhaust Tribal Remedies (Dkt. # 8); Defendant Gregory H. Bigler's Motion to Dismiss Plaintiff Kalyn Free's Complaint for Failure to Exhaust Tribal Remedies and Brief in Support (Dkt. # 14); Plaintiff's Motion to Deem Confessed Her Motion for Preliminary Injunction for Defendant Dellinger's Failure to Timely Respond (Dkt. # 19); and defendant Kevin W. Dellinger's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Dkt. # 24).

## I.

This case arises out of an ongoing dispute about gaming activities on land over which the Muscogee Creek Nation (MCN) claims to have exclusive jurisdiction. The land in question is located in Broken Arrow, Oklahoma and is known as the Bruner Parcel, and the MCN claims that

Bruner Parcel is within the historical boundaries of the MCN reservation.[1]  Dkt. # 9-2, at 1-2 (original complaint in tribal court action).  Bruner is a citizen of the MCN, but he was apparently a member of the Kialegee Tribal Town as well.  Id. at 2, 5 n.3.  On August 16, 2017, the MCN filed a civil action in the District Court of the MCN seeking a declaratory judgment and injunctive relief preventing defendants Bruner, The Kialegee Tribal Town, Jeremiah Hobia, Red Creek Holdings, LLC, and Luis Figueredo from taking any action in furtherance of gaming activity on the Bruner Parcel.  Id.  The Kialegee Tribal Town was allegedly claiming that it had shared jurisdiction over the Bruner Parcel and it had issued a gaming license to Bruner.  Id. at 3. The MCN argues that it has sole jurisdiction over the Bruner Parcel, and it is seeking to prevent illegal gaming activity on its lands.

The MCN filed an amended complaint (Dkt. # 2, at 14-18) based on the same factual allegations, and the amended complaint added Bruner Investments, Kalyn Free, Shane Rolls, John Fox, and D.J. Aleman as parties.  As to Free, the amended complaint alleges that she is spouse of Bruner and a principal in Bruner Investments.  Dkt. # 2, at 15.  The amended complaint further alleges she has "individually enabled and/or participated in the development of Red Creek Casino" on the Bruner Parcel.  Id.  The amended complaint is silent as to Free's membership in the MCN, and she states that she is a citizen of the Choctaw Nation.  Id. at 24 (Affidavit of Kalyn Free).  Free states that she has no "right, title or interest in any of [her] husband's restricted trust property, including the [Bruner Parcel]," and she denies that she has any ownership interest in Free Bruner Investments, LLC or Bruner Investments, LLC.  Id.

---

[1]  There is a separate lawsuit pending in the United States District Court for the District of Columbia concerning the Kialegee Tribal Town's rights as to the Bruner Parcel.  Kialegee Tribal Town v. Ryan K. Zinke et al., 17-CV-1670-CKK (D.D.C.).

On November 15, 2017, the MCN filed a motion to stay the proceedings until a related criminal case pending in tribal court was concluded. Dkt. # 9-4. The criminal case was filed against Bruner by the MCN, and the MCN alleged that Bruner was using the discovery rules in the civil proceedings in furtherance of his defense in the criminal matter. Id. at 2. The tribal court set the motion to stay the civil action for a hearing on November 28, 2017. Dkt. # 9-5, at 1. The MCN and Bruner appeared through counsel at the hearing.[2] Bruner's counsel did not oppose a stay of discovery until the new parties named in the amended complaint had been served. Dkt. # 31-1, at 7-8. Bruner's counsel made a statement that the stay order should "not transgress the right of a party not in the case currently to challenge jurisdiction of the Court," but he did not specifically reference Free or request that parties who not been served be permitted to file motions challenging the subject matter jurisdiction of the Court if the case were stayed. Id. at 16-17.

On the day after the hearing, Free filed a motion to dismiss in the civil case alleging that the Court lacked subject matter and personal jurisdiction over Free and Free-Bruner Investments, LLC. The motion to dismiss was two pages long and consisted of four sentences of argument, and there was no evidence attached to the motion. Dkt. # 25-1, at 2. The MCN filed a response arguing that the tribal court had jurisdiction over Free based on the Supreme Court's decisions in Montana v. United States, 450 U.S. 544 (1981), and Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9 (1987). Dkt. # 25-2. The tribal court entered an order staying the civil case in its entirety and it did not rule on Free's motion to dismiss. Dkt. # 9-7. Instead of asking the tribal court judge, Gregory H. Bigler, to rule on the motion to dismiss, Free filed an application for writ of prohibition and mandamus in

---

[2]  Bruner was represented by James Frasier, George Miles, and Trevor Reynolds, and these are the same attorneys who represent Free in this case. Dkt. # 31-1, at 3.

the Supreme Court of the MCN raising numerous arguments that were not raised in her motion to dismiss challenging the jurisdiction of the MCN's tribal court over her. Dkt. # 9-8. The Supreme Court of the MCN denied Free's application and found that she had not exhausted "all legal avenues before the [MCN's] District Court prior to utilizing the [MCN]'s appellate court system." Dkt. # 2, at 22.

On April 4, 2018, Free filed this case seeking a declaratory judgment that the tribal courts of the MCN lack jurisdiction over Free based on the allegations contained in the amended complaint filed in tribal court. Dkt. # 2. Free has also filed a motion (Dkt. # 3) seeking a preliminary injunction enjoining the tribal court from exercising jurisdiction over her. Judge Bigler has filed a response (Dkt. # 15) to the motion for preliminary injunction and has filed a motion to dismiss (Dkt. # 14) this case for lack of jurisdiction. Dellinger has not filed a response to the motion for preliminary injunction, but he has filed two motions to dismiss (Dkt ## 8, 24). Free asks the Court to find that Dellinger has confessed her motion for preliminary injunction by filing motions to dismiss, instead of a response to her motion for preliminary injunction. Dkt. # 19. However, Dellinger's motions to dismiss raise issues of judicial comity and subject matter jurisdiction, and it would make no sense to grant plaintiff's motion for preliminary injunction based on a technicality when Dellinger has filed timely motions arguing that the Court should decline to exercise jurisdiction over this case. Plaintiff's motion (Dkt. # 19) to deem her motion for preliminary injunction confessed is denied.

## II.

A motion to dismiss due to the alleged failure to exhaust tribal court remedies should be considered under Fed. R. Civ. P. 12(b)(6), rather than Fed. R. Civ. P. 12(b)(1), because exhaustion

4

of tribal remedies is a matter of judicial comity rather than a jurisdictional prerequisite to suit. Iowa Mut. Ins. Co., 480 U.S. at 16 n.8; EnCana Oil & Gas (USA) Inc. v. Whitlock, 2009 WL 10699703, *1 (D. Wyo. Aug. 28, 2009). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

Sovereign immunity is a limitation on the Court's subject matter jurisdiction, and defendants' motions to dismiss are considered a challenge to the Court's subject matter jurisdiction

to the extent that defendants assert that they possess sovereign immunity from suit. See Clymore v. United States, 415 F.3d 1113, 1118 n.6 (10th Cir. 2005). When considering a motion to dismiss under Rule 12(b)(1), the Court must determine whether the defendant is facially attacking the complaint or challenging the jurisdictional facts alleged by the plaintiff. In Holt v. United States, 46 F.3d 1000 (10th Cir. 1995), the Tenth Circuit stated:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. . . . In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Id. at 1002-03. Defendants rely on evidence outside the pleadings and the Court will construe its motion as a factual attack on the jurisdictional facts alleged by plaintiff. When ruling on a factual attack on subject matter jurisdiction, a court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts" without converting the motion into a motion for summary judgment. Stuart v. Colorado Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting Holt, 46 F.3d at 1003); see also Davis ex rel. Davis v. United States, 343 F.3d 1282, 1295-96 (10th Cir. 2003) (district court had authority to review evidence outside the pleadings without converting defendant's motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment). To defeat the defendant's Rule 12(b)(1) motion, "plaintiff must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence." Southway v. Central Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003).

**III.**

Defendants argue that they have sovereign immunity from suit, and they claim that they have not waived their sovereign immunity or consented to this lawsuit. Dkt. # 14, at 18-20; Dkt. # 25, at 4. Defendants also argue that plaintiff has failed to exhaust her remedies in tribal court before seeking a ruling from this Court that the tribal court lacks jurisdiction over her. The parties have attached numerous documents to their pleadings, and almost all of the documents are filings or transcripts from the tribal court action. The Court finds that it can take judicial notice of these documents without converting the pending motions to dismiss into motions for summary judgment. See Hodgson v. Farmington City, 675 F. App'x 838, 840-41 (10th Cir. Jan. 10, 2017).[3]

**A.**

The Supreme Court has clearly established that "an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 755 (1998). A plaintiff may not avoid tribal sovereign immunity by naming individual tribal officers as defendants, because "the interest in preserving the inherent right of self-government in Indian tribes is equally strong when suit is brought against individual officers of the tribal organizations as when brought against the tribe itself." Native American Distributing v. Seneca-Cayuga Tobacco Co., 546 F.3d 1288, 1296 (10th Cir. 2008). A tribal official sued in his official capacity is entitled to sovereign immunity to the extent the relief sought by the plaintiff would run against the Tribe itself. Fletcher v. United States, 116 F.3d 1315, 1324 (10th Cir. 1997). However, a tribal official does not possess sovereign

---

[3] Unpublished decisions are not precedential and may be used for their persuasive value only. FED. R. APP. 32.1; 10th CIR. R. 32.1.

7

immunity from suit if it is alleged that he is acting outside the scope of the authority delegated to him by the Tribe. Burrell v. Armijo, 456 F.3d 1159, 1174 (10th Cir. 2006).

The Tenth Circuit has considered whether a tribal official has sovereign immunity from suit when it is alleged that the tribal official has violated federal common law based on an unlawful exercise of tribal court jurisdiction. In Crowe & Dunlevy P.C. v. Stidham, 640 F.3d 1140 (10th Cir. 2011), a law firm, Crowe & Dunlevy P.C. (Crowe), filed a lawsuit in federal court seeking declaratory relief and a preliminary injunction against a judge of the MCN District Court, Gregory Stidham, asserting that the tribal court lacked jurisdiction. Id. at 1146. The federal court denied Stidham's motion to dismiss and entered a preliminary injunction prohibiting Stidham from enforcing certain orders entered by the tribal court. Id. at 1147. On appeal, Stidham argued that he had sovereign immunity from suit, because he was acting within the scope of his authority as a tribal judge when he entered the disputed orders. Id. at 1153. The Tenth Circuit considered whether there was an exception to tribal immunity under Ex Parte Young, 209 U.S. 123 (1908), that would allow Crowe to proceed against Stidham in federal court. In Ex Parte Young, the Supreme Court created an exception to Eleventh Amendment immunity under which a state official could be sued for prospective injunctive relief based on the fiction that such a claim was not seeking relief directly against a state. Crowe, 640 F.3d at 1154. The Tenth Circuit found that the Ex Parte Young exception to state sovereign immunity also applied to tribal sovereign immunity. Id. at 1154-55. Crowe was permitted to maintain a suit against Stidham seeking prospective relief to prevent the allegedly unlawful exercise of tribal court jurisdiction, because this would be an ongoing violation of federal law and Crowe was not seeking relief directly against an Indian tribe. Id. at 1155.

The Court finds that plaintiff has alleged a claim for prospective relief against tribal officials, and her claims are not barred by tribal sovereign immunity. Plaintiff has alleged that Judge Bigler and Dellinger are attempting to unlawfully invoke the jurisdiction of a tribal court over a nonmember, and this claim falls squarely within the exception to Ex Parte Young that was recognized by the Tenth Circuit in Crowe & Dunlevy. Defendants argue that there are factual differences between this case and Crowe & Dunlevy concerning the nature of the claims in tribal court. However, plaintiff has filed a case in this Court seeking prospective relief against tribal officials based on the allegedly unlawful exercise of tribal court jurisdiction, and any differences as to the nature of the claims in tribal court are immaterial.

**B.**

Defendants argue that this case should be dismissed, because plaintiff has failed to exhaust her remedies in tribal court. Plaintiff responds that it so clear that the tribal court lacks jurisdiction over her that the exhaustion of tribal court remedies is not required. Dkt. # 20, at 7-11; Dkt. # 28, at 9-13. Plaintiff also argues that she lacks an adequate opportunity to challenge the jurisdiction of the tribal court, and the tribal court action was brought in bad faith. Dkt. # 20, at 4-5; Dkt. # 28, at 6-8. There is no dispute that plaintiff is not a member of the MCN and that the existence of tribal court jurisdiction will be governed by the Supreme Court's decision in Montana. The Tenth Circuit has found that a party's status as a member of a different Indian tribe has no bearing on the existence of the tribal court's jurisdiction, and a tribal court will have jurisdiction over a nonmember Indian only if one of the two Montana exceptions is satisfied. Thlopthlocco Tribal Town v. Stidham, 762 F.3d 1226, 1234 (10th Cir. 2014).

In Montana, the Crow Tribe of Montana sought to regulate the hunting and fishing activities of nonmembers, but the state of Montana argued that nonmembers who engaged in hunting and fishing on tribal land were regulated by state law. Montana, 450 U.S. at 549. The tribe clearly had the power to prohibit nonmembers from hunting or fishing on the Crow reservation, but the tribe also sought to exercise regulatory authority over nonmembers on fee lands. Id. at 557. Indian tribes are sovereign nations with certain inherent powers, but tribal authority to regulate the activities of nonmembers has been divested. Id. at 564. An Indian tribe has broad powers to regulate the activities of its members, "[b]ut the exercise of tribal power beyond what is necessary to protect tribal self-government is inconsistent with the dependent status of tribes . . . ." Id. The inherent sovereign powers of an Indian tribe generally do not extend to nonmembers, but there are two exceptions to this rule that allow a tribe to regulate the activities of nonmembers in some circumstances. First, "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases, or other arrangements." Id. at 565. Second, "[a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Id. at 566. The Supreme Court found that nonmembers did not subject themselves to the civil jurisdiction of the tribe merely by hunting and fishing on fee lands, because this activity did not threaten the political or economic security of the tribe. Id.

The Supreme Court has extended the same limitations on an Indian tribe's regulatory jurisdiction over nonmembers to the context of civil adjudication. In Strate v. A-1 Contractors, 520

U.S. 438 (1997), the Supreme Court found that a "tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction" and, except for the two Montana exceptions, "the civil authority of Indian tribes and their courts with respect to non-Indian fee lands generally 'do[es] not extend to the activities of nonmembers of the tribe." Id. at 453. In a subsequent case, the Supreme Court has stated that the Montana exceptions are "limited" and they "cannot be construed in a manner that would 'swallow the rule.'" Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 330 (2008).

The question of whether a tribal court has jurisdiction over a nonmember raises a federal question for the purpose of 28 U.S.C. § 1331, and federal courts have subject matter jurisdiction to hear challenges to the civil jurisdiction of a tribal court. Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians, 471 U.S. 845, 952-53 (1985). However, federal courts have recognized that as a matter of comity "federal courts typically should abstain from hearing cases that challenge tribal jurisdiction until tribal court remedies, including tribal appellate review, are exhausted." Crowe & Dunlevy, P.C., 640 F.3d at 1149 (quoting Bank of Oklahoma v. Muscogee (Creek) Nation, 972 F.2d 1166, 1170 (10th Cir. 1992)). "This rule is grounded in federal policies supporting tribal sovereignty, including: "(1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary." Norton v. Ute Indian Tribe of the Uintah and Ouray Reservation, 862 F.3d 1236, 1242 (10th Cir. 2017). "Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review." Nat'l Farmers Union Ins.

11

Co., 471 U.S. at 857. The exhaustion of tribal court remedies is not required "(1) where 'an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith;' (2) "where the action is patently violative of express jurisdictional prohibitions;" (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction;" and (4) where it is clear that the tribal court lacks jurisdiction and that judicial proceedings would serve "no purpose other than delay . . . ." Thlopthlocco Tribal Town, 762 F.3d at 1238. A party seeking to establish one of the exceptions to the tribal exhaustion rule must make a "substantial showing of eligibility," and the exceptions will not apply as long as there is a colorable claim of tribal court jurisdiction. Norton, 862 F.3d at 1243.

Plaintiff's primary argument is that the tribal court so clearly lacks jurisdiction over her that exhaustion of tribal remedies is unnecessary.[4] She denies that she has engaged in gaming activity on tribal land or that she participated, personally or through a corporate entity, in the establishment of illegal gaming on tribal land. Dkt. # 20, at 9. Plaintiff claims that any attempt to exercise jurisdiction over her is presumptively invalid and the "austere" allegations of the amended complaint are insufficient to establish that either of the Montana exceptions apply in this case. Id. Defendants respond that Congress has recognized that Indian tribes have the exclusive authority to regulate

---

[4] Plaintiff also argues that the Court should infer that the tribal court action was brought in bad faith, because it is so clear that the tribal court lacks jurisdiction over plaintiff. Dkt. # 20, at 5. Plaintiff claims that the amended complaint in tribal court fails to comply with the pleading requirements of Twombly, and she claims that she should not be "forced to slog through tribal court proceedings intended only to harass and embarrass." Id. However, plaintiff cites no rule, statute, or tribal court precedent that Twombly is binding on tribal courts or that notice pleading is insufficient as a matter of tribal law. The Court will consider plaintiff's argument that tribal court jurisdiction is clearly lacking, but she has not raised any colorable argument that the tribal court action was brought maliciously or for the purpose of harassment.

12

gaming on tribal lands. Dkt. # 14, at 24. Defendants argue that this case arose on restricted land, not non-Indian fee land, and the MCN has the legislative authority to regulate even the activities of nonmembers on the Bruner Parcel. Id. at 16.

The amended complaint filed in tribal court alleges that plaintiff is the spouse of Bruner and a principal in Bruner Investments, and the MCN alleges that "Free individually enabled and/or participated in the development of Red Creek Casino." Dkt. # 2, at 15. The MCN asserts that the tribal court has jurisdiction to regulate unlicensed gaming on restricted land under tribal, state, and federal law. Id. at 16. The amended complaint alleges that "the actions of the original defendants and the added parties are a direct invasion upon the tribal sovereignty of the MCN," and the MCN sought an injunction prohibiting the defendants from engaging on illegal gaming on tribal lands. Id. at 18. The amended complaint also incorporates the allegations of the original complaint, and the original complaint sets out the factual basis for the claims against the tribal court defendants in greater detail. Dkt. # 2, at 14; Dkt. # 9-2.

The Court finds that plaintiff has not made a substantial showing that the tribal court clearly lacks jurisdiction over her, and this exception to the requirement to exhaust tribal remedies is inapplicable. The MCN has alleged that plaintiff and others engaged in or attempted to establish illegal gaming on restricted tribal land, and federal law recognizes that Indian tribes "have the exclusive right to regulate gaming activity on Indian lands . . . ." 25 U.S.C. § 2701(5). Even though tribal jurisdiction over nonmembers is limited, the Supreme Court has stated that "tribes retain considerable control over nonmember conduct on tribal land." Strate, 520 U.S. at 454. While the status of the land is only one factor in determining tribal jurisdiction, this factor is significant and sometimes a dispositive factor. Nevada v. Hicks, 533 U.S. 353, 360 (2001). Plaintiff denies that

13

she had any involvement in any alleged attempt to establish a gaming facility on the Bruner Parcel and that she has not engaged in activity that would subject her to the jurisdiction of the MCN's courts. Dkt. # 28. However, the tribal action was at an early stage and it does not appear that plaintiff had even filed an answer, and the MCN had not been given an opportunity to conduct discovery as to plaintiff's denials of the claims asserted against her. The tribal court should be given a chance in the first instance to make any factual findings pertaining to the existence of tribal court jurisdiction, and the parties have not presented an adequate record from which this Court could consider plaintiff's argument concerning her lack of involvement in any illegal gaming activity.

Plaintiff argues that exhaustion of administrative remedies would be futile, because the tribal court case is stayed and Judge Bigler's actions show that he will not consider plaintiff's challenge to the jurisdiction of the tribal court. Dkt. # 20, at 5-6. The futility exception applies "where the federal court plaintiff will not have an adequate opportunity to challenge the tribal court's jurisdiction." Thlopthlocco Tribal Town, 762 F.3d at 1239. Plaintiff argues that the tribal court action is stayed and the tribal court has refused to consider her motion to dismiss. Dkt. # 28, at 7. She claims that she filed an application for writ of mandamus or prohibition in the Supreme Court of the MCN, but the MCN refused to hear her application until she exhausted her remedies before the lower court. Dkt. # 9-9. A review of the order staying the tribal court actions shows that plaintiff has no present obligation to engage in any pretrial activity while the case is stayed and, even though she is nominally subject to the jurisdiction of the tribal court, she will not incur any expenses or attorney fees until the stay is lifted. Dkt. # 9-7. Judge Bigler specifically considered the timing of challenges to the jurisdiction of the tribal court during the hearing on the motion to stay, and he advised the parties that jurisdictional challenges could be considered after the stay was lifted. Dkt.

# 31-1, at 17. He did not foreclose any party from filing a motion to challenge the personal or subject matter jurisdiction of the tribal court, and plaintiff did not make a request to lift the stay as to challenges to the jurisdiction of the tribal court. Id. The record does not show that it would be futile to require plaintiff to exhaust her remedies in tribal court.

The Court finds that this case should be dismissed, because plaintiff did not exhaust her tribal court remedies before filing suit in federal court to challenge the jurisdiction of the MCN courts. Plaintiff has not met her burden to show that any of the exceptions to the exhaustion requirement are present, and it would be preferable to allow the tribal court to consider plaintiff's arguments concerning the existence of tribal jurisdiction in the first instance. The tribal court action was also in its early stages and the Court finds that there is not a sufficient factual record to consider whether plaintiff is subject to the jurisdiction of the MCN courts.

**IT IS THEREFORE ORDERED** that Defendant Dellinger's Motion to Dismiss Plaintiff's Complaint for Failure to Exhaust Tribal Remedies (Dkt. # 8) and Defendant Gregory H. Bigler's Motion to Dismiss Plaintiff Kalyn Free's Complaint for Failure to Exhaust Tribal Remedies and Brief in Support (Dkt. # 14) are **granted**. A separate judgment of dismissal is entered herewith.

**IT IS FURTHER ORDERED** that Kevin W. Dellinger's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Dkt. # 24) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Deem Confessed Her Motion for Preliminary Injunction for Defendant Dellinger's Failure to Timely Respond (Dkt. # 19) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction and Brief in Support (Dkt. # 3) is **moot**.

**DATED** this 24th day of July, 2018.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE